IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL DEJONG WARDELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-83 Erie |
| | ) | |
| MICHAEL J. ASTRUE, | ) | Judge Sean McLaughlin |
| COMMISSIONER OF SOCIAL | ) | Magistrate Judge Susan Baxter |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.     RECOMMENDATION**

It is respectfully recommended that the Plaintiff's motion for summary judgment (*ECF No. 11*) be denied, that the Defendant's motion for summary judgment (*ECF No. 15*) be granted, and that the final decision of the Commissioner of Social Security ("Commissioner") be affirmed.

**II.    REPORT**

   **A.    INTRODUCTION**

Plaintiff Michael Dejong Wardell ("Wardell") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner denying his application for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act ("Act") [42 U.S.C. §§ 1381-1383f]. The matter is presently before the Court on cross-motions for summary judgment filed by the parties pursuant to Federal Rule of Civil Procedure 56. (ECF Nos. 11, 15). Those motions are the subject of this report and recommendation, which is being filed pursuant to 28 U.S.C. § 636(b)(1)(C).

1

### B. PROCEDURAL HISTORY

Wardell protectively applied for SSI benefits on June 21, 2006, alleging that he had become "disabled" on August 1, 1984. (R. at 46). The claim was administratively denied on September 21, 2006. (R. at 46). At Wardell's request, a hearing was held on July 9, 2008, before Administrative Law Judge James J. Quigley. (R. at 46). In a decision dated August 6, 2008, Judge Quigley determined that Wardell was not "disabled" within the meaning of the Act. (R. at 43-53). Wardell sought administrative review of that decision by filing a request for review with the Appeals Council.

On September 24, 2008, Wardell protectively filed a new application for SSI benefits. (R. at 111, 155). Pennsylvania's Bureau of Disability Determination denied the claim on November 19, 2008. (R. at 58). Wardell responded on December 15, 2008, by filing a timely request for an administrative hearing. (R. at 63-64).

In an order dated February 26, 2010, the Appeals Council declined to review Judge Quigley's decision. (R. at 55). On June 1, 2010, a hearing was held in Seven Fields, Pennsylvania, before Administrative Law Judge ("ALJ") Douglas Cohen. (R. at 24-40). Wardell, who was assisted by a lay representative, appeared and testified at the hearing. (R. at 27-36). Dr. Fred Monaco, an impartial vocational expert, also testified at the hearing. (R. at 36-38). In a decision rendered on June 29, 2010, the ALJ concluded that Wardell was not statutorily "disabled." (R. at 8-20).

On July 20, 2010, Wardell sought administrative review of the ALJ's decision by filing a request for review with the Appeals Council. (R. at 7). The Appeals Council denied the request for review on January 26, 2012, thereby making the ALJ's decision the "final decision" of the Commissioner in this case. (R. at 1). Wardell commenced this action on March 23, 2012,

seeking judicial review of the Commissioner's decision. (ECF No. 1). Wardell and the Commissioner filed motions for summary judgment on July 11, 2012, and September 19, 2012, respectively. (ECF Nos. 11, 15). Those motions are now ripe for disposition.

C. STANDARD OF REVIEW

This Court's review is plenary with respect to all questions of law. *Schaudeck v. Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of*

3

*Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively-delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process by stating as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the

4

list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes omitted). Factual findings pertaining to all steps of the sequential evaluation process are subject to judicial review under the "substantial evidence" standard. *McCrea v. Commissioner of Social Security*, 370 F.3d 357, 360-361 (3d Cir. 2004).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision. *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491 (W.D.Pa. 2005).

D. **THE ALJ'S DECISION**

In his decision, the ALJ determined that Wardell had not engaged in substantial gainful activity subsequent to the date of his application. (R. at 13). Wardell was found to be suffering from major depressive disorder, generalized anxiety disorder, borderline intellectual functioning, back pain, hepatitis C, allergic rhinitis, obesity, non-malignant colon polyps, and a history of substance abuse. (R. at 13-14). His major depressive disorder, generalized anxiety disorder, borderline intellectual functioning, back pain, hepatitis C, allergic rhinitis and obesity were deemed to be "severe" under the Commissioner's regulations. (R. at 13); 20 C.F.R. §§ 416.920(a)(4)(ii), 416.920(c). The ALJ concluded that Wardell's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 14-15).

In accordance with 20 C.F.R. § 416.945, the ALJ assessed Wardell's "residual functional capacity"[1] as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity (RCF) to perform medium work (20 CFR 416.967(c)) that does not require anything more than the most basic reading and writing; that does not require more than the most rudimentary mathematical calculations (i.e. simple addition and subtraction); that is performed in a temperature controlled environment; that is limited to simple, routine, and repetitive tasks, not performed in a fast-paced production environment, involving only simple, work-related decisions, and in general, relatively few work place changes; and that does not involve high levels of stress (i.e. requiring independent decision making); and that involves no interaction with the general public and only superficial interaction with supervisors and co-workers.

(R. at 15-16). Wardell had no "past relevant work."[2] (R. at 19). Therefore, no transferable job skills could be identified. (R. at 19); 20 C.F.R. § 416.968(d).

---

[1] The term "residual functional capacity" is defined as "that which an individual is still able to do despite the limitations caused by his or her impairments." *Hartranft v. Apfel*, 181 F.3d 358, 359, n. 1 (3d Cir. 1999)(parentheses omitted), citing 20 C.F.R. § 404.1545(a). The same residual functional capacity assessment is used at the fourth and fifth steps of the sequential evaluation process. 20 C.F.R. §§ 404.1545(a)(5)(i)-(ii), 416.945(a)(5)(i)-(ii).

6

Wardell was born on January 3, 1957, making him fifty-one years old on the date of his application and fifty-three years old on the date of the ALJ's decision. (R. at 19, 111). He was classified as a "[p]erson closely approaching advanced age" under the Commissioner's regulations. 20 C.F.R. § 416.963(d)(emphasis deleted). He had the equivalent of a high school education and an ability to communicate in English.[3] (R. at 27, 148); 20 C.F.R. § 416.964(b)(4)-(5). Given the applicable residual functional capacity and vocational assessments, the ALJ concluded that Wardell could work as a bench assembler, production checker or document preparer. (R. at 19). Dr. Monaco's testimony established that these jobs existed in the national economy for purposes of 42 U.S.C. § 1382c(a)(3)(B).[4] (R. at 37-38).

E. THE EVIDENTIARY RECORD

Wardell has been incarcerated several times. (R. at 190). Dr. Julius M. Leopold, a consulting psychologist, evaluated Wardell on April 30, 1998. (R. at 187). At that time, Wardell was incarcerated at the Erie County Prison for retail theft. (R. at 187-188). In a written report describing the findings of his evaluation, Dr. Leopold reported that Wardell was suffering from borderline personality disorder. (R. at 191). Wardell was deemed to be capable of following instructions and sustaining the degree of attention necessary to perform simple, repetitive tasks. (R. at 190-191). Dr. Leopold opined that Wardell could not "relate to others appropriately" or

---

[2] "Past relevant work" is defined as "substantial gainful activity" performed by a claimant within the last fifteen years that lasted long enough for him or her to learn how to do it. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). The Commissioner has promulgated comprehensive regulations governing the determination as to whether a claimant's work activity constitutes "substantial gainful activity." 20 C.F.R. §§ 404.1571-404.1576, 416.971-416.976.

[3] Wardell testified that he had obtained his General Educational Development ("GED") certification in 2009. (R. at 29-30).

[4] At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy." *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003). This burden is commonly satisfied by means of vocational expert testimony. *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005).

7

"tolerate the stress or pressures of daily living." (R. at 191). It was recommended that Wardell undergo "extensive psychiatric treatment." (R. at 190).

In 2003, Wardell was sentenced to prison for selling illegal narcotics to an undercover police officer. (R. at 194, 260). He was released to a halfway house on June 20, 2006. (R. at 200). Wardell did not take psychiatric medications during the course of his incarceration. (R. at 199, 202). He apparently avoided medications "because he did not want to be taken advantage of by other inmates." (R. at 202). After his release, Wardell sought treatment through Stairways Behavioral Health's Outpatient Clinic. (R. at 259). His treating psychiatrist was Dr. Helen J. Kohn. (R. at 262).

On August 31, 2006, Dr. Byron E. Hillin performed a consultative psychological evaluation of Wardell in connection with his earlier application for SSI benefits.[5] (R. at 198). During the evaluation, Wardell expressed a reluctance to take psychotropic medications. (R. at 198). Although he complained of pain in his lower back, Wardell stated that he had never undergone back surgery, and that he was not on any medications for his back impairment. (R. at 200). Dr. Hillin observed that while Wardell's "borderline intellect and mild learning difficulties" would prevent him from performing the "detailed" tasks associated with "complex jobs," they would not preclude his performance of "simple repetitive-type work." (R. at 204). Wardell was deemed to be capable of retaining simple instructions and following simple directions. (R. at 204). Dr. Hillen indicated that Wardell had "marked" limitations in his abilities to understand, remember and carry out detailed instructions and "moderate" limitations in his abilities to respond appropriately to work pressures in a usual work setting, respond appropriately to changes in a routine work setting, and interact appropriately with supervisors

---

[5] As a part of the evaluation, the Wechsler Adult Intelligence Scale ("WAIS") III test was administered to Wardell. (R. at 203). He received a verbal intelligence quotient ("IQ") of 76, a performance IQ of 87, and a full scale IQ of 79. (R. at 203).

8

and co-workers. (R. at 209). According to Dr. Hillen, Wardell had only "slight" limitations in his abilities to interact appropriately with members of the general public, make judgments concerning simple, work-related decisions, and understand, remember and carry out short, simple instructions. (R. at 209).

Dr. Kohn evaluated Wardell on September 25, 2006. (R. at 259-262). It was determined that Wardell was suffering from major depressive disorder. (R. at 262). Dr. Kohn offered Wardell a prescription for Wellbutrin SR because it had an "energizing" quality and "no sexual side effects." (R. at 262). Wardell declined the offer and said that he did not want to use medications. (R. at 262).

Dr. Manella Link, a non-examining psychological consultant, opined on November 18, 2008, that Wardell was "able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from his impairments." (R. at 280). In the narrative portion of his consultative report, Dr. Link made the following observations:

> The claimant's basic memory processes are intact. Stress exacerbates his symptoms. Furthermore, he has a history of impulsive behavior. He is able to make simple decisions. He can sustain an ordinary routine without special supervision.

(R. at 280). Dr. Link considered Wardell's subjective complaints to be only "partially credible." (R. at 280).

Wardell sought treatment for his back impairment at the Saint Vincent Family Medicine Center ("Saint Vincent") in Erie, Pennsylvania. (R. at 304-311). On January 5, 2009, Wardell complained of pain in his lower back and right shoulder. (R. at 304). It was noted that his symptoms "seem[ed] to worsen with prolonged activity." (R. at 304). Three months later,

9

Wardell described a "pinching" sensation in his back and shoulders. (R. at 306). He was instructed to take Flexeril and Ibuprofen to alleviate his discomfort. (R. at 307).

During the spring of 2009, Wardell started to attend physical therapy sessions. (R. at 309). Dr. Jeffrey Clemente served as Wardell's treating therapist. (R. at 29, 309). It was determined that Wardell's back pain had been "caused by bending" and would be worsened by "prolonged sitting." (R. at 309). At some point, Wardell stopped attending his therapy sessions in order to take General Educational Development ("GED") classes. (R. at 310). On September 15, 2009, Dr. Clemente stated that Wardell's pain tended to get worse with "heavy lifting" but was otherwise "[n]ot a problem."[6] (R. at 310).

Wardell contacted Saint Vincent personnel on March 19, 2010, and complained of back pain. (R. at 317). He speculated that his pain was attributable to a kidney impairment. (R. at 317). At the hearing, Wardell testified that his back impairment could be traced to "a bad car accident on the railroad." (R. at 28). When questioned by the ALJ about diagnostic testing, Wardell stated that it had "been a while" since his back had been x-rayed because medical professionals affiliated with Saint Vincent had described his back as being "good." (R. at 29).

### F. DISCUSSION

Wardell does not challenge the ALJ's assessment of his mental impairments. Instead, he takes issue only with the ALJ's evaluation of his physical limitations. (ECF No. 13 at 10-13). The crux of Wardell's argument is that the record is devoid of evidence suggesting that he was capable of performing "medium"[7] work during the relevant period of time. (*Id.*).

When Wardell applied for SSI benefits, he alleged that he was "disabled" due to "[l]earning problems and social anxiety disorder." (R. at 149). He clearly based his claim on

---

[6] The treatment note was also signed by Dr. Timothy Pelkowski. (R. at 311).
[7] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

10

non-exertional limitations rather than on physical impairments. For this reason, his physical condition was not assessed by a medical consultant.

Social Security disability proceedings "are inquisitorial rather than adversarial." *Sims v. Apfel*, 530 U.S. 103, 110-111, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000)(plurality opinion). For this reason, an administrative law judge acting on behalf of the Commissioner has a "duty to investigate the facts and develop the arguments both for and against granting benefits." *Id.* at 111. Wardell contends that his physical condition should have been assessed by a medical expert, and that the ALJ erred in failing to obtain such an assessment. (ECF No. 13 at 10-13).

Wardell did not submit opinion evidence to support a finding that he was *unable* to perform "medium" work. It was his obligation "to provide information about his own medical condition." *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). A claimant is responsible for producing evidence about his or her own medical condition and work history. *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000)(recognizing that the claimant bears the burden of production at the first, second and fourth steps of the sequential evaluation process). Had Wardell submitted medical evidence establishing his *inability* to perform "medium" work, the ALJ would not have been able to reject that evidence without relying on countervailing medical evidence. *Doak v. Heckler*, 790 F.2d 26, 29 (3d Cir. 1986). Since Wardell failed to present such evidence, however, the ALJ was not required to seek a medical opinion describing Wardell's lifting and carrying abilities. *Chandler v. Commissioner of Social Security*, 667 F.3d 356, 362 (3d Cir. 2011)("But the ALJ is not precluded from reaching RFC determinations without outside medical expert review of each fact incorporated into the decision.").

When a case proceeds to the fifth step of the sequential evaluation process, the "burden of production" shifts to the Commissioner. *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). Nevertheless, the "burden" placed on the Commissioner does not relate to the claimant's abilities and limitations. Instead, it relates solely to the existence of jobs in the regional or national economy that could be performed by an individual with those abilities and limitations. *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003). The assessment of a claimant's residual functional capacity precedes both the fourth and fifth steps of the process. *Her v. Commissioner of Social Security*, 203 F.3d 388, 391 (6th Cir. 1999). The *same* residual functional capacity assessment is used at both steps. 20 C.F.R. § 416.920(e)-(g). The Commissioner's burden at the fifth step requires only the production of vocational evidence, which is not readily accessible to an individual claimant. *Allen v. Barnhart*, 417 F.3d 396, 405-408 (3d Cir. 2005). In the absence of evidence suggesting that Wardell was *unable* to perform "medium" work, it was permissible for the ALJ to find that Wardell *could* perform "medium" work without seeking the opinion of a medical expert. *Chandler*, 667 F.3d at 362. It is worth noting that Judge Quigley, in his decision of August 6, 2008, found Wardell to be physically capable of performing "a full range of work at all exertional levels." (R. at 50). Wardell points to nothing in the record which suggests that his physical condition deteriorated between the date of that decision and the period of time at issue in this case. (ECF No. 13 at 10-13). In this respect, the ALJ gave Wardell the benefit of the doubt by restricting him to "medium" work. (R. at 16-17).

The ALJ found Wardell's obesity to be a "severe" impairment. (R. at 13). Where obesity is found to be severe, its impact on a claimant's ability to engage in work-related activities must be considered. *Diaz v. Commissioner of Social Security*, 577 F.3d 500, 504-505

(3d Cir. 2009). Wardell asserts that the ALJ failed to fulfill this responsibility. (ECF No. 13 at 13). A careful review of the record, however, reveals that Wardell's contention is meritless.

The ALJ specifically noted that while obesity had been deleted from the Listing of Impairments, he was nevertheless required to account for it in determining Wardell's residual functional capacity. (R. at 14). At the hearing, Wardell attributed his obesity to depression. (R. at 33). He testified that his depression had caused him to "eat a lot," thereby causing him to gain more weight. (R. at 33). Although the ALJ accepted this testimony, he pointed out that Wardell had "alleged no functional limitations associated with his weight." (R. at 18). Even at this stage, Wardell does not identify a functional limitation caused by his obesity. (ECF No. 13 at 13). Because Wardell's urge to eat was directly tied to his mental impairments, the ALJ adequately accounted for that urge by limiting Wardell to a range of work that would not exacerbate his depressive symptoms. (R. at 18).

Where the record contains objective evidence of a medically determinable impairment that could reasonably be expected to cause a symptom alleged by a claimant, an administrative law judge must give serious consideration to the claimant's subjective complaints pertaining to that symptom even if there is no objective evidence of the symptom itself. *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993). In determining the effect that a claimant's symptoms have on his or her ability to work, the Commissioner's regulations require consideration of factors such as the claimant's daily activities, the treatment employed to alleviate his or her symptoms, measures used to control or minimize pain, the side effects of his or her medications, and the location, duration, frequency and intensity of the symptoms. 20 C.F.R. § 416.929(c)(3). Wardell maintains that the ALJ failed to consider these factors in determining his credibility as a witness. (ECF No. 13 at 13-16). Contrary to Wardell's assertion, the applicable regulations did not

require the ALJ "to use particular language or adhere to a particular format in conducting his analysis." *Jones*, 364 F.3d at 505. References to the relevant factors are interspersed throughout the ALJ's opinion. For instance, the ALJ observed that while Wardell had "complained of aches and pains," he was taking "only over-the-counter Aleve to address his symptoms." (R. at 16). Wardell fails to point out a specific factor that was overlooked by the ALJ. (ECF No. 13 at 13-16). Under these circumstances, it suffices to say that the ALJ was not required to credit Wardell's subjective complaints in every respect. *Chandler*, 667 F.3d at 363.

A vocational expert's testimony cannot be relied upon to establish the existence of jobs in the national economy consistent with a claimant's residual functional capacity unless the question eliciting that testimony incorporates all of the claimant's functional limitations. *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002). Where a credibly established limitation is omitted from an administrative law judge's hypothetical question to a vocational expert, there is a danger that the vocational expert will identify jobs requiring the performance of tasks that would be precluded by the omitted limitation. *Ramirez v. Barnhart*, 372 F.3d 546, 552-555 (3d Cir. 2004). Every limitation contained in the ALJ's residual functional capacity assessment was conveyed to Dr. Monaco.[8] (R. at 37-38). Therefore, Wardell can challenge the sufficiency of Dr. Monaco's testimony only by attacking the ALJ's underlying residual functional capacity assessment. *Rutherford v. Barnhart*, 399 F.3d 546, 554, n. 8 (3d Cir. 2005). For the reasons discussed earlier, Wardell cannot impugn that assessment. Indeed, he does not even purport to identify a limitation that was improperly rejected or overlooked by the ALJ. Consequently, Dr. Monaco's testimony satisfied the Commissioner's burden of production at the fifth step of the

---

[8] The restrictions permitting no interaction with members of the general public and only superficial interaction with supervisors and co-workers were mentioned in a follow-up question posed by the ALJ. (R. at 38). Dr. Monaco testified that those limitations would not preclude an individual from working as a bench assembler, production checker or document preparer. (R. at 37-38).

14

sequential evaluation process. *Johnson v. Commissioner of Social Security*, 529 F.3d 198, 205-206 (3d Cir. 2008).

As the ALJ observed in his decision, no medical source rendered an opinion declaring Wardell to have restrictions extending beyond those contained in the residual functional capacity finding at issue. (R. at 19). Furthermore, no physician or psychiatrist indicated that Wardell was "disabled" during the period of time relevant to this case.[9] The record is devoid of evidence which contradicts the ALJ's factual findings. The onus was on Wardell "to provide information about his own medical condition." *Bowen*, 482 U.S. at 146, n. 5. Since Wardell failed to submit evidence establishing the existence of limitations more severe than those found by the ALJ, he cannot fault the ALJ for basing the administrative decision on the evidence contained in the existing record. *Her*, 203 F.3d at 391-392.

### G. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Wardell's motion for summary judgment (*ECF No. 11*) be denied, and that the Commissioner's motion for summary judgment (*ECF No. 15*) be granted. It is further recommended that the "final decision" of the Commissioner denying Wardell's application for SSI benefits be affirmed. In accordance with 28 U.S.C. § 636(b)(1), the parties have fourteen days to file objections to this report and recommendation. A party's failure to file written objections will seriously impair his ability to challenge this Court's legal conclusions on appeal. *Brightwell v. Lehman*, 637 F.3d 187, 193, n. 7 (3d Cir. 2011).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

---

[9] Dr. Leopold's assessment predated the ALJ's decision by more than twelve years. (R. at 187-191).

cc:     All counsel of record

        Sean J. McLaughlin
        United States District Judge